# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION AT CINCINNATI

DANIEL ESTRADA-LOPEZ,

            Petitioner,      :      Case No. 1:13-cv-600

  - vs -                       Chief Judge Susan J. Dlott
                               Magistrate Judge Michael R. Merz

GEORGE CRUTCHFIELD, Warden,
  Warren Correctional Institution,

                               :

            Respondent.

# REPORT AND RECOMMENDATIONS

With the assistance of counsel, Petitioner Daniel Estrada-Lopez brought this habeas corpus action under 28 U.S.C. § 2254 to obtain relief from his conviction for aggravated murder and sentence to imprisonment for of thirty-three years to life (Petition, Doc. No. 1, PageID 14).

Estrada-Lopez pleads one ground for relief:

> **Ground One:** The Confrontation Clause prohibits the prosecution from introducing testimonial statements of a nontestifying forensic analyst through the in-court testimony of a surrogate who did not perform or observe the analysis described in the statements. *Crawford v. Washington*, 541 U.S. 36 (2004); *Melendez-Diaz v. Massachusetts*, 557 U.S. 305 (2009); *Bullcoming v. New Mexico*, 131 S. Ct. 2705, 180 L. Ed. 2d 610 (2011).
>
> **Supporting Facts:** Over objection, Travis Worst, a forensic scientist at the Ohio Bureau of Criminal Identification and Investigation, testified for the prosecution regarding DNA analysis performed by his colleague, Michael Losko. Mr. Worst did not observe Mr. Losko's work. But Mr. Losko completed a laboratory report documenting his analysis and conclusions. The report was admitted into evidence, went to the jury, and Mr. Worst testified solely about Mr. Losko's statements in the report.

1

*Id.* at PageID 18, 27.

On Magistrate Judge Litkovitz's Order (Doc. No. 4), the Respondent filed a Return of Writ (Doc. No. 7) and Petitioner has filed a Reply (Doc. No. 12).

**Procedural History**

Estrada-Lopez was indicted by the Butler County Grand Jury on one count of aggravated murder with a firearm specification in 2008. A jury convicted him on both the charge and the specification and he was sentenced to thirty years to life plus three years consecutive for the firearm. On appeal, he raised three assignments of error, including a claim that testimony at trial violated the Confrontation Clause. The Twelfth District Court of Appeals affirmed the conviction and Estrada-Lopez appealed to the Supreme Court of Ohio. That court accepted jurisdiction but later dismissed the appeal on motion of the State which relied on an unchallenged finding of harmless error by the court of appeals. Petitioner's motion for reconsideration grounded in *Bullcoming v. New Mexico*, 564 U.S. ___, 131 S.Ct. 2705, 180 L.Ed.2d 610 (2011), and *Williams v. Illinois*, 567 U.S. ___, 132 S.Ct. 2221, 183 L.Ed.2d 89 (2012), was denied and he filed the instant Petition on August 27, 2013. Estrada-Lopez has been represented by counsel at every stage of the proceedings.

Respondent raises no affirmative defenses, but contends Estrada-Lopez's sole ground for relief is without merit.

## Analysis

The Twelfth District Court of Appeals decided the question before this Court in a published opinion, *State v. Lopez*, 186 Ohio App. 3d 328 (12th Dist. 2010). Two pieces of DNA evidence were presented to the jury. The first piece identified the blood on Estrada-Lopez's gun as that of the victim, Gloria Applegate. This evidence was not critical because Estrada-Lopez admitted shooting her in the head. However, the predicate offense on which the State relied to elevate the crime to aggravated murder was rape. The court of appeals noted:

> [P35] While Lopez readily admitted that he murdered Applegate, his defense at trial was that he did not rape or attempt to rape her. However, the state presented testimony and evidence from which the jury could have found the essential elements of rape or attempted rape proven beyond a reasonable doubt.
>
> [P36] The state presented DNA evidence placing Lopez's bodily fluids on Applegate's breast. As part of the investigation, police swabbed various parts of Applegate's body, hoping to find DNA evidence. The swab of her breast and nipple area tested positive for amylase, a chemical component found in saliva as well as other bodily fluids.[1] When comparing Lopez's sample against the DNA found on Applegate, the chances of another test confirming a match other than Lopez was one in 2,288,000,000,000,000,000 (two quintillion 288 quadrillion).
>
> FOOTNOTES
>
> [1] According to the DNA analyst's testimony, amylase is 10 times more concentrated in saliva than sweat.

*Estrada-Lopez, supra*.

After Estrada-Lopez was convicted and while his appeal was pending, the United States Supreme Court decided *Melendez-Diaz v. Massachusetts*, 557 U.S. 305 (2009), in which it decided that reports of scientific analysis were testimonial in nature and their admission without

the testimony of the analyst who prepared the report violated the Confrontation Clause under *Crawford v. Washington,* 541 U.S. 36, 53-54 (2004). The Twelfth District distinguished *Melendez-Diaz* on the ground that in that case the trial court had admitted a sworn affidavit, standing alone, whereas in this case Travis Worst, a forensic scientist with the Ohio Bureau of Criminal Investigation, testified in open court and was cross-examined regarding the results of the DNA testing. *Estrada-Lopez, supra*, at ¶ 47.

> [**P48] During his testimony, Worst explained that while he was not the analyst who tested the blood and swab samples, he had performed a technical review of the examinations that were performed on each piece of evidence.[2] Worst went into great detail regarding the process of peer review and how fellow analysts examine the procedures performed during the original testing to verify the analyst's work and to ensure that proper protocol was followed.
>
>> FOOTNOTES
>>
>> [2] While Lopez argues that his rights were violated because Worst was not the technical reviewer of a biology sample tested by an unavailable analyst, a review of the record indicates that Worst reviewed the file, had performed the same type of testing before, was familiar with the testing of biological samples, and that he reviewed the procedures used by the original analyst. Immediately following his explanation of the way he performs technical reviews, Worst stated that he reviewed the biological testing and found no disputes between the analyst's conclusions and his own. While the biology sample may have gone through a prior technical review under a different analyst, Worst's testimony demonstrates that he too performed a thorough review of the testing and was therefore able to discuss any imperfections or failure to follow proper protocol that may have tainted the testing.
>
> [**P49] Specifically, when asked to explain to the jury the way a technical review is performed, Worst stated that he would "essentially open the case file, see the terms of the testing, see what evidence [had been] tested, see if the testing was correct, check the reagents, check [the] chain of custody. Essentially, I treat

4

> the case as my own***." Worst then testified he found no error in the testing and that he had come to the same conclusions as the analysts who had originally tested the samples. According to those results, as confirmed by Worst in his testimony, Applegate's blood was found in and on Lopez's gun, and Lopez's DNA was found on the swab taken from Applegate's breast.

*Id.* . The court further found that the two analysts who had conducted the DNA analysis were unavailable for trial because one was in training in another state and one was in emergency surgery. *Id.* at ¶ 47. That finding is apparently uncontested.

At the time *Melendez-Diaz* was decided, the Supreme Court had pending a petition for certiorari from the Supreme Court of Ohio in the case of Lee Crager which raised a question closer to the question posed in this case. According to the Twelfth District,

> Crager was convicted of aggravated murder after the jury heard testimony from a BCI analyst that Crager's DNA was found at the victim's residence and that blood on Crager's clothing matched that of the victim's. As in Lopez's trial, the analyst who actually performed the tests was unavailable to testify at trial, and the state called a different BCI employee to testify to the tests' accuracy and results. On appeal, the court held that "a criminal defendant's constitutional right to confrontation is not violated when a qualified expert DNA analyst testifies at trial in place of the DNA analyst who actually conducted the testing." *Crager* at P79.

*Estrada-Lopez, supra,* at ¶ 57. Four days after deciding *Melendez-Diaz*, the Supreme Court granted certiorari in *Crager*, but never rendered a decision on the merits. Instead, it vacated the judgment and "remanded to the Supreme Court of Ohio for further consideration in light of *Melendez-Diaz*. . . ." *Crager v. Ohio,* 557 U.S. 930 (2009). Instead of engaging in further analysis, the Ohio Supreme Court *sua sponte* vacated the trial court's judgment and remanded so that the Common Pleas Court of Marion County could reconsider admissibility of DNA evidence in light of *Melendez-Diaz. State v. Crager*, 123 Ohio St. 3d 1210 (2009). There are no later

5

reported decisions in *Crager* considering the remanded question.

Because the Ohio Supreme Court's prior decision in *Crager* was based on finding scientific reports were admissible as business records and non-testimonial, it did not reach the question whether the presence of a competent analyst along with the records would make a difference under *Crawford*. The basis of the Ohio Supreme Court's decision in *Crager* was completely undercut by *Melendez-Diaz,* the Twelfth District had to decide for itself whether Estrada-Lopez's case was distinguishable from *Melendez-Diaz*. *Estrada-Lopez, supra,* ¶ 61. It noted that other courts, drawing guidance from dicta in *Melendez-Diaz*, had found "that a defendant's confrontation rights are not violated when the state calls a witness other than the analyst who performed the original test." *Id.* at ¶ 66, citing *Pendergrass v. State,* 913 N.E. 2d 703 (Indiana 2009); *People v. Johnson*, 394 Ill. App. 3d 1027, 915 N.E. 2d 845 (2009); *Carolina v. State,* 690 S.E. 2d 435 (Ga. App. 2010); and *Larkin v. Yates*, 2009 U.S. Dist. LEXIS 60106 (C.D. Cal. 2009). Applying the logic of these cases, the Twelfth District found *Melendez*-Diaz to be distinguishable:

Trial courts are obliged to follow precedent set by Supreme Court and Courts of Appeals. "Unless we wish anarchy to prevail within the federal judicial system, a precedent of this Court must be followed by the lower federal courts no matter how misguided the judges of those courts may think it to be." *Hutto v. Davis*, 454 U.S. 370, 375 (1982) *Litman v. Massachusetts Mut. Life Ins. Co.*, 825 F.2d 1506 (11th Cir. 1987).

> **[P71]** Lopez was able to cross-examine Worst and was therefore given the chance to challenge the way the tests were performed and whether the results were reliable. Calling Worst therefore satisfied the majority's stance regarding the ability of confrontation to weed out fraudulent test results. Cross-examining Worst further pointed out the inability of the test to offer dispositive evidence of the alleged rape. Specifically, through the cross-examination, Worst admitted that the testing only identified the match, and not

6

> how or when Lopez's amylase was deposited on Applegate's breast. Lopez also had the opportunity to challenge Worst on his technical review of the testing and the ways in which he formed his independent conclusions on the accuracy of the testing and results. Therefore, and given Lopez's ability to cross-examine the witness against him, having Worst testify rather than the two analysts who performed the original tests did not violate Lopez's right to confrontation.

*Estrada-Lopez, supra.*

The Twelfth District noted that the Supreme Court of Ohio had not yet offered a new analysis of Crager's case in light of the remand and therefore adopted an alternative harmless error analysis as well:

> **[P72]** Although we are confident in our analysis, we are also cognizant that the Ohio Supreme Court is still to speak on this specific issue. Even if in its reconsideration of *Crager* the court were to find that a violation of Crager's rights occurred because he did not have the chance to cross-examine the analyst who performed the original tests, Lopez's conviction would still stand as any error in permitting Worst's testimony was harmless.
>
> **[P73]** Lopez readily admitted to killing Applegate. He specifically told officers that he was with Applegate the night she was killed and that he struggled with her in the alley. His entire defense at trial was that he did not rape or attempt to rape her. Therefore the DNA evidence in this case does not have the same impact it may have had if Lopez had denied having contact with Applegate or otherwise refuted the state's accusation that he killed her.
>
> **[P74]** As discussed under Lopez's second assignment of error, Worst's testimony verified for the jury that Lopez's amylase was found on Applegate's breast. However, through Lopez's cross-examination of Worst, the jury was told specifically that there was no way to verify how Lopez's amylase was deposited on Applegate's breast. We also note that Lopez never questioned the results of the testing. Instead, during Worst's cross-examination, Lopez's counsel began a question by stating, "these tests are obviously conclusive to whose amylase that would be \*\*\*." However, the rest of his question and other questions during cross-examination verified that the tests could not determine whether the sample was unquestionably sweat or saliva, or when and how

7

> Lopez's amylase was transferred to Applegate's body. Although it may not have, the jury was free to infer that the sample was sweat transferred during the struggle that Lopez described in his statement to Lucy Garcia and police officers.
>
> **[P75]** However, even without the DNA evidence or existence of amylase on Applegate's breast, in light of Lopez's confession and explanation to Garcia of what occurred in the moments before he killed Applegate, the jury had ample evidence upon which to base Lopez's conviction. See *State v. Wynn*, Butler App. No. CA2009-04-120, 2009 Ohio 6744 (finding harmless error where appellant's conviction was based on other evidence of guilt and where appellant never questioned the tests' results even though the trial court admitted a lab report absent live testimony based on *Crager's* premise that scientific testing was nontestimonial). Therefore, any error in the admission of Worst's testimony regarding the DNA analysis of evidence used against Lopez was harmless beyond a reasonable doubt.

*Estrada-Lopez, supra.*

The Twelfth District thus decided two questions of federal law. It held admission of Worst's testimony in lieu of the testimony of those who performed the DNA analysis did not violate Estrada-Lopez's Confrontation Clause rights. In the alternative, it held that any error resulting from admission of the testimony was harmless.

When Estrada-Lopez appealed to the Ohio Supreme Court, he pled one Proposition of Law: "The Confrontation Clause prohibits the state from introducing testimonial statements of a nontestifying forensic analyst through the in-court testimony of a third-party who did not perform or observe the laboratory analysis on which the statements are based." (Memorandum in Support of Jurisdiction, Return of Writ, Doc. No. 7, Ex. 24, PageID 672.) In arguing that Proposition of Law, however, he argued against both conclusions by the Twelfth District. *Id.*

The State moved the Supreme Court of Ohio to dismiss the case as improvidently accepted and argued that Estrada-Lopez had not disputed the harmless error finding. *Id.* at Ex. 28. Estrada-Lopez corrected that misimpression, but the Ohio Supreme Court nevertheless

8

dismissed the appeal as improvidently accepted. *State v. Estrada-Lopez*, 132 Ohio St. 3d 1510 (2012). This decision contains no opinion on the merits and leaves the case as if the Ohio Supreme Court had never accepted jurisdiction. It is therefore the last reasoned decision on the merits – that of the Twelfth District Court of Appeals -- that this Court must examine. Y*lst v. Nunnemaker*, 501 U.S. 797 (1991).

When a state court decides on the merits a federal constitutional claim later presented to a federal habeas court, the federal court must defer to the state court decision unless that decision is contrary to or an objectively unreasonable application of clearly established precedent of the United States Supreme Court. 28 U.S.C. § 2254(d)(1); *Harrington v. Richter*, 562 U.S. ___, 131 S. Ct. 770, 785 (2011); *Brown v. Payton,* 544 U.S. 133, 140 (2005); *Bell v. Cone*, 535 U.S. 685, 693-94 (2002); *Williams (Terry) v. Taylor,* 529 U.S. 362, 379 (2000). Petitioner accepts this as the required standard of review and contends the Twelfth District's decision is objectively unreasonable on both the underlying merits and the harmless error analysis.

"Clearly established law" for habeas corpus purposes must be established by holdings of the United States Supreme Court handed down before the state court decided the case.

> AEDPA [the Antiterrorism and Effective Death Penalty Act of 1996] provides that, when a habeas petitioner's claim has been adjudicated on the merits in state-court proceedings, a federal court may not grant relief unless the state court's adjudication of the claim "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). A state-court decision is contrary to this Court's clearly established precedents if it applies a rule that contradicts the governing law set forth in our cases, or if it confronts a set of facts that is materially indistinguishable from a decision of this Court but reaches a different result. *Williams v. Taylor, supra,* at 405; *Early v. Packer,* 537 U.S. 3, 8, 123 S.Ct. 362, 154 L.Ed.2d 263 (2002) *(per curiam).* A state-court decision involves an unreasonable application of this Court's clearly established

9

> precedents if the state court applies this Court's precedents to the facts in an objectively unreasonable manner. *Williams v. Taylor, supra,* at 405; *Woodford v. Visciotti,* 537 U.S. 19, 24-25, 123 S.Ct. 357, 154 L.Ed.2d 279 (2002) *(per curiam).*

*Brown v. Payton,* 544 U.S. 133, 134 (2005). In determining whether a state court decision is contrary to or an unreasonable application of clearly established Supreme Court precedent, a federal court may look only to the holdings, as opposed to the dicta, of the Supreme Court's decisions as of the time of the relevant state court decision. *Lockyer v. Andrade*, 538 U.S. 63, 71, 123 S. Ct. 1166, 155 L. Ed. 2d 144 (2003); *Williams*, 529 U.S. at 412. Thus the relevant Supreme Court precedent in this case is *Melendez-Diaz*, which was decided while this case was on direct appeal, and not *Bullcoming v. New Mexico*, 564 U.S. ___, 131 S.Ct. 2705, 180 L.Ed.2d 610 (2011), or *Williams v. Illinois*, 567 U.S. ___, 132 S.Ct. 2221, 183 L.Ed.2d 89 (2012), both of which were decided after the Twelfth District's decision.

**Confrontation Clause Analysis**

Melendez-Diaz was charged with distributing cocaine.

> At trial, the prosecution placed into evidence the bags seized from Wright and from the police cruiser. It also submitted three "certificates of analysis" showing the results of the forensic analysis performed on the seized substances. The certificates reported the weight of the seized bags and stated that the bags "[h]a[ve] been examined with the following results: The substance was found to contain: Cocaine." App. to Pet. for Cert. 24a, 26a, 28a. The certificates were sworn to before a notary public by analysts at the State Laboratory Institute of the Massachusetts Department of Public Health, as required under Massachusetts law. Mass. Gen. Laws, ch. 111, § 13.

557 U.S. at 320. The certificates in question had been prepared and were admitted under a

10

Massachusetts statute which made such certificates "prima facie evidence of the composition, quality, and the net weight of the narcotic . . . analyzed." *Id.* at 309, quoting Mass. Gen. Laws, ch. 111, § 13.  Justice Scalia found the certificates in question were materially indistinguishable from affidavits:

> The fact in question is that the substance found in the possession of Melendez-Diaz and his codefendants was, as the prosecution claimed, cocaine--the precise testimony the analysts would be expected to provide if called at trial. The "certificates" are functionally identical to live, in-court testimony, doing "precisely what a witness does on direct examination." *Davis v. Washington*, 547 U.S. 813, 830, 126 S. Ct. 2266, 165 L. Ed. 2d 224 (2006) (emphasis deleted).

*Id.* at 310-11.  The Court rejected the argument that the analysts' certificates did not directly accuse Melendez-Diaz but were only inculpatory when considered with other evidence admitted against him.  *Id.* at 313-14.  It rejected admission of the certificates without confrontation on the basis that the analysts were not "conventional" witnesses. *Id.* at 315-17. It rejected a proffered distinction between testimony recounting historical events and testimony which was the product of neutral, scientific testing.  *Id.* at 325-28.  And it refused to classify the certificates as business records admissible without confrontation.  *Id.* at 328-30.

The Twelfth District distinguished *Melendez-Diaz* because in this case "the state did not read a report into the record or offer an affidavit in lieu of live testimony.  *Estrada-Lopez, supra*, at ¶ 69.  That distinction is material.  It is completely impossible to confront an affidavit by cross-examination.  Here, in contrast, Travis Worst, a supervisor of the analyst who performed the DNA analysis, testified at length about the results of the analysis and what they showed.  The Twelfth District relied on this distinction and noted that cross-examining Worst would serve the functions noted in *Melendez-Diaz* of weeding out both the fraudulent and the incompetent

11

analyses. *Estrada-Lopez, supra*, at ¶ 70-71. Worst was indeed an expert witness capable of testifying on DNA testing and able to respond to cross-examination about the actual testing done in this case. Thus Petitioner's quip that the witness used might as well have been "a supervisor, a police officer, or a lay person hailed from the courthouse lobby" (Traverse, Doc. No. 12, PageID 881) misses the point.

While the Sixth Amendment does, as Petitioner claims, guarantee a defendant the right "to be confronted with the witnesses against him," (*Id.,* quoting the Sixth Amendment), it does not guarantee that all persons who have inculpatory evidence will be called at trial. For example, as the dialogue in *Melendez-Diaz* between Justice Scalia and Justice Kennedy clarifies, not every person in the chain of custody of seized evidence must be called, although the prosecution omits custodians at a risk to credibility.

The question before this Court is not whether the Supreme Court may eventually decide a case like *Crager* and hold the analyst must be called. Rather the question is whether the Twelfth District's application of *Melendez-Diaz* was objectively reasonable at the time it was made.

The distinction between knowledgeable experts and those who merely act as conduits for hearsay was recognized by the Supreme Court in *Williams v. Illinois, supra*. While the case produced no majority opinion, the Court did affirm the Illinois Supreme Court's decision that no Confrontation Clause violation occurred in circumstances similar to those in this case.

While the Twelfth District's distinction may not ultimately prevail in the Supreme Court, it was not an objectively unreasonable application of *Melendez-Diaz* when it was decided in 2010. Therefore it is entitled to AEDPA deference.

**Harmless Error Analysis**

As an alternative to its distinction of *Melendez-Diaz*, the Twelfth District offered a harmless error analysis, concluding any error was harmless beyond a reasonable doubt. *Estrada-Lopez, supra*, ¶¶ 72-75.

Acknowledging that the constitutional standard for harmless error is less strict than proof beyond a reasonable doubt,[1] Petitioner still argues this Court should not grant AEDPA deference to the Twelfth District's harmless error conclusion (Traverse, Doc. No. 12, PageID 883). Petitioner reasons, "The Ohio appellate court listed the DNA evidence as its leading justification that there was sufficient evidence to convict Mr. Estrada-Lopez of aggravated murder . . . ." *Id.*

The Magistrate Judge disagreed. Presence of Estrada-Lopez's DNA on the victim's breast is proof of sexual contact, but does not tend to prove whether the contact was consensual (i.e., as a result of Estrada-Lopez's hiring Applegate for sex) or whether it was non-consensual. The facts in the Twelfth District's opinion supportive of the rape conclusion are (1) Applegate was naked except for socks and shoes, an unlikely occurrence in a public alley if the contact were consensual; (2) Estrada-Lopez's admission to Lucy Morales Garcia that he had ordered Applegate to come back to him at gunpoint when she started walking away; (3) Estrada-Lopez's admission to Lucy Morales Garcia that he pushed Applegate to the ground and got on top of her and she then struggled before he shot her in the head; (4) the presence of only $2.57 in

---

[1] In *Brecht v. Abrahamson*, 507 U.S. 619 (1993), the Supreme Court adopted the standard from *Kotteakos v. United States*, 328 U.S. 750 (1946), which calls for reversal when the reviewing court lacks a "fair assurance" that the outcome of a trial was not affected by evidentiary error. *Beck v. Haik*, 377 F.3d 624 (6th Cir. 2004). *Brecht* applies post-AEDPA "whether or not the state appellate court recognized the error and reviewed it for harmlessness under the 'harmless beyond a reasonable doubt' standard set forth in *Chapman v. California*, 386 U.S. 18, 24, 87 S. Ct. 824, 17 L. Ed. 2d 705" *Fry v. Pliler*, 551 U.S. 112 (2007).

Applegate's clothing as inventoried after her death, the exact amount inventoried from her when she was arrested for disorderly conduct earlier in the evening, supporting the inference that Estrada-Lopez had not paid her. None of the stories Estrada-Lopez told police were consistent with consensual sex. Instead, he claimed that she somehow undid his belt. He then reached for his gun while she removed her pants and panties. She then pushed him to the ground and he shot her. *Estrada-Lopez, supra*, ¶ 10.

Given that state of the evidence, the Twelfth District's harmless error conclusion is not an objectively unreasonable application of *Brecht v. Abrahamson, supra.*

**Conclusion**

Based on the foregoing analysis, it is respectfully recommended that the Petition be dismissed with prejudice. Because of the uncertain state of the law in applying *Melendez-Diaz*, Petitioner should be granted a certificate of appealability and allowed to appeal *in forma pauperis*.

September 16, 2014.

s/ *Michael R. Merz*<br>United States Magistrate Judge

**NOTICE REGARDING OBJECTIONS**

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within fourteen days after being served with this Report and Recommendations. Pursuant to Fed. R. Civ. P. 6(d), this period is extended to seventeen days because this Report is being served by one of the methods of service listed in Fed. R. Civ. P. 5(b)(2)(C), (D), (E), or (F). Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendations are based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections within fourteen days after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See United States v. Walters*, 638 F.2d 947, 949-50 (6th Cir. 1981); *Thomas v. Arn*, 474 U.S. 140, 153-55 (1985).